# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN HANSEN, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>FERRELLGAS PARTNERS, L.P., FERRELLGAS, INC., STEPHEN L. WAMBOLD, and  ALAN C. HEITMANN,<br><br>                              Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jonathan Hansen ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Ferrellgas Partners, L.P. ("Ferrellgas" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ferrellgas; and (c) review of other publicly available information concerning Ferrellgas.

## NATURE OF THE ACTION AND OVERVIEW

1.    This is a class action on behalf of persons and entities that acquired Ferrellgas securities between June 1, 2015, and September 28, 2016, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.    Ferrellgas is primarily engaged in the retail distribution of propane and related equipment sales, and midstream operations - crude oil logistics.  The Company's midstream operations - crude oil logistics ("Bridger") segment purportedly provides domestic crude oil transportation and logistics services, connecting crude oil production in the U.S. to downstream markets.  The Company claims that Bridger's truck, pipeline terminal, pipeline, rail and maritime assets form a fee-for-service business model, and that substantially all of its cash flow is generated from fee-based commercial agreements.

3.    On September 28, 2016, the Company announced that Stephen L. Wambold had stepped down from his roles as President and Chief Executive Officer ("CEO") and as a member of the Board.  The Company also announced that James E. Ferrell, the Company's founder and Chairman of the Board of Directors, had been appointed as Interim President and Chief Executive Officer.

---

[1] "Defendants" refers to Ferrellgas, Ferrellgas, Inc., Stephen L. Wambold, and Alan C. Heitmann.

4.     On the same day, September 28, 2016, the Company issued a press release entitled "Ferrellgas Partners, L.P. Reports Fiscal 2016 Earnings."  Therein, the Company announced a fiscal year 2016 net loss of $665.4 million, compared to net earnings of $29.6 million in the full fiscal year 2015.  The net loss purportedly included "a one-time non-cash impairment charge of $628.8 million in [the Company's] Midstream operations — Crude oil Logistics segment and a one-time non-cash impairment charge of $29.3 million in [the Company's] Other midstream operations — water solutions reporting unit."  The Company also announced Adjusted EBITDA of $344.7 million for fiscal 2016, falling below the Company's earlier prediction of $400 million to $420 million.  Then Interim President and Chief Executive Officer ("CEO"), James E. Ferrell, was quoted in the press release, stating "unusually warm winters over the past two years drove down propane sales across all our geographies, and low crude oil prices have negatively impacted our midstream logistics business."  The Company also stated that, due to several factors, including those identified above, the Company's leverage ratio had increased to levels approaching the 5.5x limit provided in its secured credit facility and accounts receivable securitization facility, and that, in response, Ferrellgas obtained an amendment under the secured credit facility and accounts receivable securitization facility pursuant to which the maximum leverage ratio was "increased to a range of 5.95x to 6.05x over the next six quarters."  The Company also stated that it was "focused on the reduction of its debt and leverage ratio" and that the Company was considering lowering its quarterly distribution, which would "continue to be determined by the board of directors of our general partner on a quarter-by-quarter basis."  Finally, the Company stated that the distribution for the first quarter of fiscal 2017 had not yet been determined, but that the board believed that it was possible that the annual distribution rate would be reduced from $2.05 to approximately $1.00 per common unit.

5.     On this news, Ferrellgas' share price fell $3.50 per share, or 21.2%, to close at $13.00 per share on September 28, 2016, on unusually heavy trading volume.  Thereafter, the share price continued to decline, falling $1.23 per share (9.4%) on September 29, 2016, $0.13

per share on September 30, 2016, $0.98 per share (8.4%) on October 3, 2016, and $0.94 per share (8.8%) on October 4, 2016, to close at $9.72 per share on October 4, 2016.

6.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company's propane sales were declining; (2) that the Company's midstream logistics business was being negatively impacted by low crude oil prices; (3) that, as such, the Company's Adjusted EBITDA would fall below the Company's projections; (4) that the Company was becoming more and more leveraged; (5) that, in response, the Company would need to obtain an amendment under the secured credit facility and accounts receivable securitization facility to increase the maximum leverage ratio to a range of 5.95x to 6.05x; (6) that, as a result of the foregoing, the Company would likely need to reduce its dividend; and (7) that, as a result of the foregoing, Defendants' statements about Ferrellgas' business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information,

occurred in substantial part in this Judicial District.  In addition, the Company's shares are actively traded within this Judicial District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiff Jonathan Hansen, as set forth in the accompanying certification, incorporated by reference herein, purchased Ferrellgas common units during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Ferrellgas is organized under the laws of Delaware with its principal executive offices located in Overland Park, Kansas.  Ferrellgas' common units trade on the New York Stock Exchange ("NYSE") under the symbol "FGP."

14.     Defendant Ferrellgas, Inc. is the general partner of Ferrellgas.

15.     Defendant Stephen L. Wambold ("Wambold") was, at all relevant times, the CEO and President of Ferrellgas, Inc., the general partner of Ferrellgas.

16.     Defendant Alan C. Heitmann ("Heitmann") was, at all relevant times, the Vice President, Chief Financial Officer ("CFO"), and Treasurer of Ferrellgas, Inc., the general partner of Ferrellgas.

17.     Defendants Wambold and Heitmann are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Ferrellgas' reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be

corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Ferrellgas is primarily engaged in the retail distribution of propane and related equipment sales, and midstream operations - crude oil logistics. The Company's midstream operations - crude oil logistics segment purportedly provides domestic crude oil transportation and logistics services, connecting crude oil production in the U.S. to downstream markets. The Company claims that Bridger's truck, pipeline terminal, pipeline, rail and maritime assets form a fee-for-service business model, and that substantially all of its cash flow is generated from fee-based commercial agreements.

### Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on June 1, 2015.  On that day, Ferrellgas issued a press release entitled, "Ferrellgas Partners to Acquire Bridger Logistics; Announces Distribution Increase."  Therein, the Company, in relevant part, stated:

> OVERLAND PARK, Kan., June 1, 2015 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) today announced that it has entered into a definitive purchase and sale agreement to acquire Dallas-based Bridger Logistics, LLC, a provider of integrated crude oil midstream services, for a purchase price of approximately $837.5 million, subject to certain closing adjustments. In conjunction with this transaction, Ferrellgas also announced that its Board of Directors has approved a $0.0125 increase in its quarterly distribution rate to $0.5125 per FGP common unit ($2.05 on an annualized basis), effective following the closing of the transaction.
>
> Founded in 2010, Bridger owns and operates assets across the midstream value chain and can provide end-to-end crude oil logistics, including trucking,

terminaling, pipeline, rail, and maritime, from the wellhead to end markets across North America. Bridger has operations in 14 states and virtually all major U.S. crude oil production regions, including the Permian, Bakken, Rockies, Niobrara, Mid-Continent, Gulf Coast, and Eagle Ford.

The move positions Ferrellgas to significantly expand its midstream platform and is expected to be immediately accretive to Ferrellgas and supportive of future distribution growth. The company, which is the nation's second largest propane retailer and the nation's largest provider of propane by portable tank exchange, established a midstream division on May 1, 2014, when it acquired Sable Environmental, LLC.

"We are extremely pleased to welcome Bridger into the Ferrellgas family," **Stephen L. Wambold**, Chief Executive Officer and President of Ferrellgas, said. "It is a remarkable organization with a proven record of developing robust midstream assets and executing long-term growth initiatives. We'll benefit greatly from their collective experience and deep customer relationships as we continue to pursue midstream-focused growth opportunities."

Bridger, which was named Inc. Magazine's "Fastest Growing Energy Company" in 2013, will continue to operate as an independent entity inside of Ferrellgas.

**Julio Rios**, President and Chief Executive Officer of Bridger, will continue to oversee its operations and will report directly to Mr. Wambold. "Today marks another exciting step in Bridger's history," said Rios. "We believe in Ferrellgas' long-term strategic vision, and its collective resources create an opportunity for us to expand Bridger's existing midstream footprint and continue to provide an unmatched level of service to our customers."

With the addition of Bridger, Ferrellgas now offers a comprehensive portfolio of crude-focused midstream assets, diversifying its existing asset base and creating a platform from which to execute its long-term midstream growth initiatives.
"This is a landmark transaction for Ferrellgas and represents a key milestone in our diversification efforts," said **Todd Soiefer**, Ferrellgas' Senior Vice President of Strategic Development. "Bridger's established and growing footprint of crude logistics assets allows us to strategically diversify our existing business and add significant scale to our growing midstream platform."

**Transaction Overview**

The $837.5 million purchase price represents an approximately 8.4x multiple of estimated next twelve months Bridger EBITDA of $100 million. The consideration will consist of approximately $562.5 million of cash and 11.2 million Ferrellgas common units issued directly to the sellers. Bridger's core executive management team will join Ferrellgas, ensuring a smooth transition and a continued focus on strategic execution. The transaction is expected to close

by July 1, 2015 and is subject to customary closing conditions.

20.     On June 9, 2015, Ferrellgas issued a press release entitled, "Ferrellgas Partners Reports Third Quarter Results; Reaffirms Guidance for Fiscal 2015 Adjusted EBITDA." Therein, the Company, in relevant part, stated:

> OVERLAND PARK, Kan., June 9, 2015 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) announced today Adjusted EBITDA of $96.3 million for fiscal 2015's third quarter ended April 30, down 4% from the $99.8 million in the prior year quarter reflecting temperatures that were 6% warmer than prior year quarter. Distributable Cash Flow (DCF) to equity investors in the quarter was $70.0 million producing DCF coverage of 1.12x for the trailing twelve month period.
>
> Propane margin cents per gallon benefited from wholesale commodity prices that were 54% lower than the prior year. Operating expense of $106.9 millionwas down more than 6% from the year-ago level driven primarily by the company's ability to flex down our variable delivery costs, including personnel and fuel cost, which more than offset additional operating expenses associated with our midstream acquisition in May of 2014. Strong margin cents per gallon and lower operating expenses helped minimize the effect of warmer temperatures in the more highly concentrated geographic areas we serve.
>
> "We are pleased with our third quarter results given the challenges presented by the warmer weather" said President and Chief Executive Officer Stephen L. Wambold. "Strong propane margins, operational flexibility, and a continued focus on expense discipline in our retail operations are continuing to offset the effect of the warmer temperatures, and as such we are comfortable reaffirming our full-year adjusted EBITDA guidance of $300 million to $320 million."
>
> Ferrellgas recently announced the acquisition of Bridger Logistics, LLC for $837.5 million. The Bridger transaction, scheduled to close in our fourth quarter 2015, is expected to be immediately accretive to DCF, supportive of distribution growth, and pushes the company to its near-term diversification goal. In addition to that achievement, Ferrellgas remains dedicated to the aggressive pursuit of accretive, complementary acquisitions in both the traditional propane space and midstream.
>
> "We've made smart business decisions over the last few years and put ourselves in position to move boldly and decisively on the acquisition front," Wambold said. "Our acquisition pipeline is strong and keeps getting stronger, and we remain committed to exploring a wide range of opportunities that fit our model and our culture."
>
> For the first nine months ended April 30 of fiscal 2015, Adjusted EBITDA

improved to $267.6 million, up from $262.6 million posted in the first nine months of the prior fiscal year. Similar to our quarterly results, strong margin cents per gallon and operating expense declines offset temperatures that were 8% warmer than the fiscal 2014 period. Net earnings were $89.4 million or $1.06 per unit for the first nine months of fiscal 2015.

21.     On the same day, June 9, 2015, Ferrellgas filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended April 30, 2015.  The Company's Form 10-Q was signed by Defendant Heitmann, and affirmed the Company's financial results announced in the press release issued the same day.

22.     On September 29, 2015, Ferrellgas issued a press release entitled, "Ferrellgas Partners, L.P. Reports Record Adjusted EBITDA for Fiscal 2015."  Therein, the Company, in relevant part, stated:

OVERLAND PARK, Kan., Sept. 29, 2015 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) today announced record Adjusted EBITDA of $300.2 million for fiscal 2015, up 4% from the previous year of $288.1 milliondespite temperatures that were 8% warmer than the prior year. Distributable Cash Flow (DCF) to equity investors for the year was $189.6 million, producing DCF coverage of 1.12x for the 12-month period.

"We are thrilled to present strong results to our investors despite weather that was a hindrance to our core propane business," said President and Chief Executive Officer Stephen L. Wambold. "Strong propane margins, operational flexibility, a continued focus on expense discipline in our retail operations and our focus on our diversification strategy allowed us to offset the effect of the warmer nationwide temperatures Mother Nature handed us throughout the year."

Propane margin cents per gallon benefited from wholesale commodity prices that were 43% lower than the prior year. Operating expense of $432.3 million was down more than 3% from the year-ago level, driven primarily by the company's ability to flex down variable delivery costs, including personnel and fuel cost, which more than offset additional operating expenses associated with the full-year impact our midstream water solutions acquisition in May of 2014 and the impact of our Bridger Logistics, LLC ("Bridger") acquisition in the fourth quarter.

Strong margin cents per gallon and lower operating expenses helped minimize the effect of warmer temperatures in the more highly concentrated geographic areas we serve. General and administrative expense rose to $56.4 millionfrom $46.0 million, primarily attributable to one-time transaction costs associated with the Bridger acquisition of$16.4 million. Interest expense increased to $100.4 million from $86.5 million, reflecting increased borrowings to fund acquisition

and growth capital expenditures. Net earnings for the year were $30.1 million, or $0.35 per common unit, compared to $33.7 million, or $0.41 per common unit.

During the fourth quarter Ferrellgas closed on its previously announced $822.5 million acquisition of Bridger. The Bridger transaction is a significant step toward Ferrellgas' near-term diversification goals. Ferrellgas remains dedicated to the aggressive pursuit of accretive, complementary acquisitions in both the traditional propane space and midstream.

"Our acquisition of Bridger contributed nearly $8.6 million of Adjusted EBITDA during the short period of time we've owned these high-quality assets, and we continue to believe Bridger will meet or exceed our expectations in fiscal 2016," Wambold said. "We've made smart business decisions over the last few years and put ourselves in position to move boldly and decisively on the acquisition front. Our midstream and propane acquisition pipelines remain robust, and we remain committed to exploring a wide range of opportunities that fit our strategic model and our growth culture."

23.     On the same day, September 29, 2015, Ferrellgas filed its Annual Report with the SEC on Form 10-K for the fiscal year ended July 31, 2015.  The Company's Form 10-K was signed by Defendant Wambold, and affirmed the Company's financial results announced in the press release issued the same day.

24.     On December 9, 2015, Ferrellgas issued a press release entitled, "Ferrellgas Partners, L.P. Reports Results for First Quarter Fiscal 2016."  Therein, the Company, in relevant part, stated:

OVERLAND PARK, Kan., Dec. 09, 2015 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) today announced Adjusted EBITDA of $48.9 million for the first quarter of fiscal 2016 ended October 31, up 42% from $34.4 million in the same quarter of last year, due to strong results from the Bridger acquisition, which the partnership completed in June 2015. Distributable Cash Flow (DCF) to equity investors for the quarter was $11.2 million, producing DCF coverage of 1.08x for the trailing twelve month period.

President and Chief Executive Officer Stephen L. Wambold commented, "We are excited to report a solid first quarter that represents our first full quarter of combined results following the completed acquisition of Bridger and officially welcoming the organization into the Ferrellgas family. We continue to integrate Bridger, which will serve as a platform for continued midstream growth and diversification. We are also encouraged by the continued solid financial and operational performance of our Propane segment. While persisting warmer nationwide temperatures during our first fiscal quarter put pressure on our

Propane segment's results, our flexibility, focus on maintaining strong margins and commitment to containing retail expenses allowed us to offset the unfavorable operating environment."

Mr. Wambold concluded, "We are more excited than ever about the future of Ferrellgas and the strong pipeline of acquisition and organic development opportunities. With our acquisition of Bridger we have established a firm foundation for a powerful midstream growth platform and we expect to continue developing our already diverse footprint and extensive customer base in high-growth regions over the course of fiscal 2016 and beyond."

Propane margin cents per gallon continued to benefit from lower wholesale commodity prices, and during the first fiscal quarter, prices were 57% lower than those of the same quarter in fiscal 2015. Strong margin cents per gallon and lower operating expenses in the Propane and related equipment sales segment helped minimize the effect of warmer temperatures in the more highly concentrated geographic areas Ferrellgas serves. Temperatures were 31% warmer than normal and 13% warmer than prior year for the first fiscal quarter.

Adjusted EBITDA from the Midstream - Crude Oil Logistics segment was $24.8 million during the first fiscal quarter, driven exclusively by the Bridger acquisition which exceeded management's expectations for the first full fiscal quarter subsequent to the closing of the acquisition. These results reflect management's focus on expense controls as well as Bridger's strong customer relationships and contractual agreements which helped navigate a volatile commodity price environment. The partnership is on pace to generate $100 million of adjusted EBITDA in this segment for full-year fiscal 2016.

Operating expense for the first quarter increased to $115.0 million from $102.9 million in the first fiscal quarter of 2015, primarily due to the additional operating expenses associated with the Bridger acquisition. General and administrative expense rose to $12.2 million from $10.8 million in the fiscal first quarter of 2015, also as a result of the acquisition.

Interest expense increased to $33.8 million for the first fiscal quarter from $23.9 million a year ago, reflecting increased borrowings to fund acquisition and growth capital expenditures. The seasonal Net loss for the quarter was $80.6 million, or $0.79 per common unit, compared to $33.2 million, or $0.40 per common unit in the prior year quarter. The increase in seasonal Net loss is due in part to a one-time, non-cash goodwill write-off related to the partnership's midstream water solutions operations and a one-time loss on trucks held for sale.

Ferrellgas today also reaffirmed its previously provided estimates for full-year fiscal 2016 Adjusted EBITDA of $400 million to $420 million based on continued confidence in the partnership's traditional retail operations and expected strong contributions from Bridger.

25.     On the same day, December 9, 2015, Ferrellgas filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended October 31, 2015.  The Company's Form 10-Q was signed by Defendant Heitmann, and affirmed the Company's financial results announced in the press release issued the same day.

26.     On March 10, 2016, Ferrellgas issued a press release entitled, "Ferrellgas Partners, L.P. Reports Results for Second Quarter Fiscal 2016."  Therein, the Company, in relevant part, stated:

> OVERLAND PARK, Kan., March 10, 2016 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) today announced Adjusted EBITDA of $138.3 million for the second quarter of fiscal 2016 ended January 31, 2016, an increase from $136.9 million in the prior year period.
>
> President and Chief Executive Officer Stephen L. Wambold commented, "Despite this being one of the warmest winters on record, our ongoing midstream diversification efforts allowed us to deliver a year-over-year increase in Adjusted EBITDA. Bridger continues to exceed our expectations and we are carefully controlling costs to help offset the challenging operating environment for our Propane and related equipment sales segment."
>
> Mr. Wambold continued, "Looking ahead to the second half of our fiscal year, we will maintain focus on operations and strategic execution. Additionally, we will continue to consider value-enhancing organic and external growth initiatives to mitigate the impact of continued warm weather and capitalize on opportunities created by low crude oil prices. We have ample financial flexibility to drive growth without accessing the capital markets, and we are confident that we have the pieces in place to create significant value for all Ferrellgas unitholders."
>
> Continued strong expense controls in the Propane and related equipment sales segment helped offset the impact of elevated temperatures, which were 19% warmer than normal and 16% warmer than the prior year period.
>
> Adjusted EBITDA from the Midstream - Crude Oil Logistics segment was $28.7 million during the second fiscal quarter, which exceeded management's expectations. These results reflect the strength of Bridger's customer relationships amid sustained volatility in commodity pricing, and management's ability to carefully control expenses and drive efficiencies.
>
> Operating expense for the second fiscal quarter increased to $116.5 million from $107.1 million in the prior year period, due to incremental operating expenses from Bridger and non-cash items related to the changes in fair value of

fuel derivatives and contingent consideration in the current year and prior year, respectively.

Interest expense totaled $34.7 million for the second fiscal quarter, compared to $24.4 million a year ago, largely due to $500 million of notes issued in connection with the Bridger acquisition in June 2015.

Net earnings for the quarter was $57.8 million, or $0.58 per common unit, compared to net earnings of $86.4 million, or $1.02 per common unit, in the prior year quarter. The decrease in net earnings is due in part to the increase in interest expense discussed above and warm weather, as well as depreciation and amortization expenses related primarily to the Bridger transaction.

Ferrellgas also today announced that, due to sustained warmer temperatures and the current commodity price environment, it is revising its previously announced estimates for full-year fiscal 2016 Adjusted EBITDA to a range of $360 million to $375 million. Based on the midpoint of the Company's fiscal 2016 estimates for Adjusted EBITDA, Ferrellgas expects its DCF coverage ratio to increase to above 1.0 by the end of the fiscal year.

27.    On the same day, March 10, 2016, Ferrellgas filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended January 31, 2016.  The Company's Form 10-Q was signed by Defendant Heitmann, and affirmed the Company's financial results announced in the press release issued the same day.

28.    On June 8, 2016, Ferrellgas issued a press release entitled, "Ferrellgas Partners, L.P. Reports Results for Third Quarter Fiscal 2016."  Therein, the Company, in relevant part, stated:

OVERLAND PARK, Kan., June 08, 2016 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) ("Ferrellgas" or the "Company") today reported financial results for its third fiscal quarter ended April 30, 2016. The Company reported Net earnings attributable to Ferrellgas Partners, L.P. of $18.7 million, compared to $35.8 million for the quarter ended April 30, 2015.

Adjusted EBITDA was $108.0 million, an increase of 12% over the same quarter last year, including $25.2 million of Adjusted EBITDA from the Bridger Logistics acquisition which was completed in June of 2015.

"Like many in our industry, we continue to be impacted by the extremely warm temperatures nationwide, and the downturn in the commodities market, including lower crude oil prices and project delays and cancellations," said Stephen L. Wambold, President and Chief Executive Officer. "We experienced an average of

18% warmer weather than normal during the quarter, which reduced heating needs across all our geographies and significantly drove down propane segment volumes and revenues. Notwithstanding these operating conditions, we are pleased to have delivered a 12% year-over-year increase in Adjusted EBITDA."

Mr. Wambold continued, "Bridger continues to perform well, providing gross profits and adjusted EBITDA in our third quarter that more than offset decreases in our water solutions and propane segments. Importantly, we remain focused on reducing expenses and continue to evaluate value-enhancing organic and external growth opportunities to drive growth and mitigate the impact of the challenging operating environment. We expect our distributable cash flow coverage to rebound to more than 1.0x by the end of 2016, with leverage dropping below 5.0x. We continue to execute against our strategic plan and remain confident that we have the initiatives in place to create value for all Ferrellgas unitholders."

Continued strong expense controls in the Propane and related equipment sales segment and strong results from the Midstream Crude Oil segment helped offset the impact of elevated temperatures, which were 18% warmer than normal and 21% warmer than the prior year period.

Even though there were strong expense controls, due to the Bridger Transaction, Operating expense and General and administrative expense for the third fiscal quarter increased to $115.1 million and $12.4 million respectively.

Interest expense totaled $34.4 million for the third fiscal quarter, compared to $23.5 in the prior year period, primarily due to $500 million of notes issued in connection with the Bridger acquisition in June 2015.

Net earnings for the quarter were $18.9 million, or $0.19 per common unit, compared to net earnings of $36.2 million, or $0.43 per common unit, in the prior year period. The decrease in net earnings is primarily related to the impact of warm weather on our propane and related equipment sales segment and the increases in Depreciation and amortization expense and interest expense both primarily related to the acquisition of Bridger.

29.     On the same day, June 8, 2016, Ferrellgas filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended April 30, 2016.  The Company's Form 10-Q was signed by Defendant Heitmann, and affirmed the Company's financial results announced in the press release issued the same day.

30.     The above statements contained in ¶¶19-29 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements

and/or failed to disclose: (1) that the Company's propane sales were declining; (2) that the Company's midstream logistics business was being negatively impacted by low crude oil prices; (3) that, as such, the Company's Adjusted EBITDA would fall below the Company's projections; (4) that the Company was becoming more and more leveraged; (5) that, in response, the Company would need to obtain an amendment under the secured credit facility and accounts receivable securitization facility to increase the maximum leverage ratio to a range of 5.95x to 6.05x; (6) that, as a result of the foregoing, the Company would likely need to reduce its dividend; and (7) that, as a result of the foregoing, Defendants' statements about Ferrellgas' business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

31.     On September 28, 2016, the Company issued a press release entitled "Ferrellgas Partners, L.P. Announces CEO Transition."  Therein, the Company, in relevant part stated:

> Ferrellgas Partners, L.P. . . .today announced that James E. Ferrell, the Company's founder and Chairman of the Board of Directors, has been appointed as Interim President and Chief Executive Officer, effective immediately. Mr. Ferrell succeeds Stephen L. Wambold, who has stepped down from his roles as President and Chief Executive Officer and as a member of the Board.

32.     On the same day, September 28, 2016, the Company issued a press release entitled "Ferrellgas Partners, L.P. Reports Fiscal 2016 Earnings."  Therein, the Company, in relevant part, stated:

> OVERLAND PARK, Kan., Sept. 28, 2016 (GLOBE NEWSWIRE) -- Ferrellgas Partners, L.P. (NYSE:FGP) ("Ferrellgas" or the "Company") today reported financial results for the full fiscal year ended July 31, 2016.

> The Company reported a net loss attributable to Ferrellgas Partners, L.P. of $665.4 million, compared to net earnings attributable to Ferrellgas Partners, L.P. of $29.6 million in the full fiscal year 2015.  The net loss for the current fiscal year includes a one-time non-cash impairment charge of $628.8 million in our Midstream operations – Crude oil Logistics segment and a one-time non-cash impairment charge of $29.3 million in our Other midstream operations – water solutions reporting unit.

> The Company also announced Adjusted EBITDA of $344.7 million for fiscal 2016, an increase of 14.8% from $300.2 million in the previous year.

Continued strong expense controls in the Propane and related equipment sales segment helped offset the impact of elevated temperatures, which were 19% warmer than normal and 16% warmer than the prior year period. Interest expense totaled $137.9 million for the full fiscal year in 2016, compared to $100.4 million in the prior year, primarily due to $500 million of notes issued in connection with the Bridger acquisition in June 2015.

"As we highlighted last quarter, record temperatures across the nation continue to have an adverse impact on the propane sector of our company and low oil prices have seriously damaged our midstream sector." said James E. Ferrell, Interim President and Chief Executive Officer. "In particular, unusually warm winters over the past two years drove down propane sales across all our geographies, and low crude oil prices have negatively impacted our midstream logistics business."

Because of the increase in debt incurred to fund the Bridger acquisition, the recently announced Jamex settlement and the effects of the record warm temperatures in fiscal 2016, our leverage ratio has increased to levels approaching the 5.5x limit provided in our secured credit facility and accounts receivable securitization facility.   On September 27, 2016, Ferrellgas obtained an amendment under the secured credit facility and accounts receivable securitization facility pursuant to which the maximum leverage ratio is increased to a range of 5.95x to 6.05x over the next six quarters.

Further, the Company is focused on the reduction of its debt and leverage ratio. One tactic under consideration is a reduction in our quarterly distribution, which will continue to be determined by the board of directors of our general partner on a quarter-by-quarter basis. The distribution for the first quarter of fiscal 2017 has not yet been determined, but our board believes that it is possible that the annual distribution rate may be reduced from $2.05 to approximately $1.00 per common unit. Any such reduction, together with any other debt-reducing actions taken would likely remain in effect until our leverage ratio reaches a level that we deem appropriate for our business.

Mr. Ferrell stated, "In light of the recent developments related to our Jamex settlement, a prolonged downturn in the midstream sector, as well as two full years of erratic weather patterns driving down propane demand, we are taking prudent action at this time to preserve capital and improve the Company's financial position. We are committed to strengthening our balance sheet by de-levering in a meaningful way. We are confident this action will support the long-term interests of our unitholders, employee-owners and other stakeholders, and we look forward to growth in distribution when our leverage ratio and debt return to more reasonable levels."

33.     On this news, Ferrellgas' share price fell $3.50 per share, or 21.2%, to close at $13.00 per share on September 28, 2016, on unusually heavy trading volume.  Thereafter, the

share price continued to decline, falling $1.23 per share (9.4%) on September 29, 2016, $0.13 per share on September 30, 2016, $0.98 per share (8.4%) on October 3, 2016, and $0.94 per share (8.8%) on October 4, 2016, to close at $9.72 per share on October 4, 2016.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Ferrellgas' securities between June 1, 2015, and September 28, 2016, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

35.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Ferrellgas' common units were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Ferrellgas shares were traded publicly during the Class Period on the NYSE.  As of September 6, 2016, Ferrellgas had 97,152,665 common units outstanding.  Record owners and other members of the Class may be identified from records maintained by Ferrellgas or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.    Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ferrellgas; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

40.     The market for Ferrellgas' securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Ferrellgas' securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Ferrellgas' securities relying upon the integrity of the market price of the Company's securities and market information relating to Ferrellgas, and have been damaged thereby.

41.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Ferrellgas' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or

misrepresented the truth about Ferrellgas' business, operations, and prospects as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ferrellgas' financial well-being and prospects.   These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.   Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

43.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44.     During the Class Period, Plaintiff and the Class purchased Ferrellgas' securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the

federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Ferrellgas, his/her control over, and/or receipt and/or modification of Ferrellgas' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ferrellgas, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

46.     The market for Ferrellgas' securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Ferrellgas' securities traded at artificially inflated prices during the Class Period.  On June 1, 2015, the Company's share price closed at a Class Period adjusted high of $20.89 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Ferrellgas' securities and market information relating to Ferrellgas, and have been damaged thereby.

47.     During the Class Period, the artificial inflation of Ferrellgas' shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ferrellgas' business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Ferrellgas and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

48.     At all relevant times, the market for Ferrellgas' securities was an efficient market for the following reasons, among others:

(a)     Ferrellgas shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Ferrellgas filed periodic public reports with the SEC and/or the NYSE;

(c)     Ferrellgas regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Ferrellgas was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.   Each of these reports was publicly available and entered the public marketplace.

49.     As a result of the foregoing, the market for Ferrellgas' securities promptly digested current information regarding Ferrellgas from all publicly available sources and reflected such information in Ferrellgas' share price. Under these circumstances, all purchasers of Ferrellgas' securities during the Class Period suffered similar injury through their purchase of Ferrellgas' securities at artificially inflated prices and a presumption of reliance applies.

50.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Ferrellgas who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ferrellgas' securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

54.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ferrellgas' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ferrellgas' financial well-being and prospects, as specified herein.

56.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ferrellgas' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Ferrellgas and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

57.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the

Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

58.    The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ferrellgas' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

59.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Ferrellgas' securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Ferrellgas' securities during the Class Period at artificially high prices and were damaged thereby.

60.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff

and the other members of the Class and the marketplace known the truth regarding the problems

that Ferrellgas was experiencing, which were not disclosed by Defendants, Plaintiff and other

members of the Class would not have purchased or otherwise acquired their Ferrellgas securities,

or, if they had acquired such securities during the Class Period, they would not have done so at

the artificially inflated prices which they paid.

61.     By virtue of the foregoing, Defendants have violated Section 10(b) of the

Exchange Act and Rule 10b-5 promulgated thereunder.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and

the other members of the Class suffered damages in connection with their respective purchases

and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants and Ferrellgas, Inc.**

63.     Plaintiff repeats and realleges each and every allegation contained above as if

fully set forth herein.

64.     The Individual Defendants and Ferrellgas, Inc. acted as controlling persons of

Ferrellgas within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue

of their high-level positions, and their ownership and contractual rights, participation in and/or

awareness of the Company's operations and/or intimate knowledge of the false financial

statements filed by the Company with the SEC and disseminated to the investing public, the

Individual Defendants had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of the Company, including the content and

dissemination of the various statements which Plaintiff contends are false and misleading.  The

Individual Defendants and Ferrellgas, Inc. were provided with or had unlimited access to copies

of the Company's reports, press releases, public filings and other statements alleged by Plaintiff

to be misleading prior to and/or shortly after these statements were issued and had the ability to

prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, each of these Defendants had direct and supervisory involvement in

the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.     As set forth above, Ferrellgas, Ferrellgas, Inc. and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants and Ferrellgas, Inc. are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

<b><u>JURY TRIAL DEMANDED</u></b>

Plaintiff hereby demands a trial by jury.

Dated:  October 6, 2016

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
Gregory B. Linkh (GL-0477)
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com
glinkh@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160

*Attorneys for Plaintiff*

## SWORN CERTIFICATION OF PLAINTIFF

## FERRELLGAS PARTNERS, L.P. SECURITIES LITIGATION

I, Jonathan Hansen, individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.  I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.  I did not purchase **FERRELLGAS PARTNERS, L.P.**, the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in **FERRELLGAS PARTNERS, L.P.** during the Class Period set forth in the Complaint are as follows:

    (See attached transactions)

5.  I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

10/5/2016
_____
Date

DocuSigned by:

*Jonathan Hansen*
BA132E72063A4AD...    Jonathan Hansen

**Jonathan Hansen's Transactions in**
**Ferrellgas Partners, LP (FGP)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 09/23/2016 | Bought | 198 | $16.7600 |