UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN HANSEN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>  -v-<br><br>FERRELLGAS PARTNERS, L.P., *et al.*,<br><br>                    Defendants. | No. 16-cv-7840 (RJS) |
| JAMES A. MASSIE, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>  -v-<br><br>FERRELLGAS PARTNERS, L.P., *et al.*,<br><br>                    Defendants. | No. 16-cv-8850 (RJS) |
| THOMAS BABCOCK, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>  -v-<br><br>FERRELLGAS PARTNERS, L.P., *et al.*,<br><br>                    Defendants. | No. 16-cv-9294 (RJS)<br><br>OPINION AND ORDER |

RICHARD J. SULLIVAN, District Judge:

      Before the Court are three putative class action suits brought on behalf of investors who claim to have suffered damages as a result of Defendants' alleged misconduct in violation of

Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5.  Now before the Court are six motions pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") filed by persons or groups of persons seeking consolidation of the three actions, appointment as lead plaintiff, and appointment of their counsel as lead counsel for the putative class.  Those motions were fully briefed by December 23, 2016.  For the reasons set forth below, the Court consolidates the cases, appoints movants Susan Batai, Joel Brenner (individually and as trustee for the Joel Brenner MPP Plan & Trust), Kevin Gaberlavage, and Lazy Dogs Partnership LLLP (the "Batai Group") as co-lead plaintiffs, and appoints Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as lead counsel.

I.  BACKGROUND

On November 14, 2016, the Court so-ordered a stipulation between Defendants and the first-filing plaintiff in case number 16-cv-7840 (Jonathan Hansen), which indicated that, under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(i), lead plaintiff motions were due by December 5, 2016.  (16-cv-7840, Doc. No. 11.)[1]  As noted above, on December 5, 2016, six persons or groups of persons filed lead plaintiff motions.  (Doc. Nos. 12, 15, 16, 21, 22, 25.)  The movants and their choice of counsel include:  (1) Frank Gracar, represented by Hagens Berman Sobol Shapiro LLP, (2) James R. Baxter, represented by Kahn Swick & Foti, LLC, (3) Kevin Sheetz, represented by Faruqi & Faruqi, LLP, (4) Thomas Babcock, Michael Conforti, Hal Scofield, and Mary Thornton (collectively, the "Babcock Group"), represented by The Rosen Law Firm, P.A. and Bronstein, Gewirtz & Grossman, LLC, (5) Alan Carlsen, Ernest Davis, Timothy Lopatofsky, and L. Lee Williams, Jr. (collectively, the "Carlsen Group"), represented by Kirby McInerney LLP and

---

[1] All docket citations below are to the docket in case number 16-cv-7840 unless otherwise indicated.

Glancy Prongay & Murray LLP, and (6) the Batai Group, represented by Kessler Topaz.[2] Named plaintiffs Jonathan Hansen and James A. Massie, who filed the complaints in case numbers 16-cv-7840 and 16-cv-8850, respectively, have not filed lead plaintiff motions.

On December 6, 2016, the Court issued an order directing the movants to respond to each other's motions by December 16, 2016 and to submit replies by December 23, 2016. (Doc. No. 29.) In response to that order, several movants filed notices of "non-opposition," indicating that they do not oppose one or more competing lead plaintiff motions. Sheetz filed a notice of non-opposition to all competing motions, generally acknowledging that he does not possess the largest financial interest. (Doc. No. 32.) The Babcock Group filed a notice of non-opposition to the Batai Group's motion, on account of the Batai Group's larger financial interest, but the notice states that Babcock alone should be appointed lead plaintiff if the Court is disinclined to appoint a group. (Doc. No. 33.) The Carlsen Group filed a notice of non-opposition to the Batai Group's motion on the same ground, but did not alternatively request an individual appointment. (Doc. No. 36.) The remaining movants filed briefs opposing one or more of the competing motions. Gracar filed an opposition arguing that he should be named lead plaintiff because the group movants have improperly aggregated their financial interests and that he has the largest financial interest of any individual movant. (Doc. No. 34.) Baxter filed an opposition similarly arguing that the Court should disqualify the group movants and conceding that Gracar has the largest individual financial interest, but also asserting that, if the Court declines to appoint Gracar, Baxter is the next most adequate candidate. (Doc. No. 37.) And finally, the Batai Group filed an opposition arguing that it should be named lead plaintiff because it has the largest collective financial interest. (Doc. No.

---

[2] While the Batai Group refers to itself as the "Ferrellgas Investor Group" (Doc. No. 25), the Court finds that term to be likely to cause confusion since several of the movants here constitute groups of purported Ferrellgas Partners, L.P., investors. Accordingly, the Court uses the term "Batai Group."

38.) On December 23, 2016, Baxter (Doc. Nos. 40, 41), Gracar (Doc. Nos. 42, 43), and the Batai Group (Doc. Nos. 44, 45) each filed reply papers.

## II.  CONSOLIDATION

A court may consolidate two or more actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure where the actions involve "a common question of law or fact." Fed. R. Civ. P. 42(a); *see also Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). The trial court has broad discretion to consolidate actions under Rule 42(a). *See Johnson*, 899 F.2d at 1284.

Here, the substantial overlap among the three complaints in the above-captioned actions supports consolidation. All three complaints name as defendants Ferrellgas Partners, L.P. ("Ferrellgas"), Ferrellgas, Inc. (Ferrellgas's general partner), Stephen L. Wambold (Ferrellgas's CEO during the relevant period), and Alan C. Heitmann (Ferrellgas's CFO during the relevant period). One complaint also names J. Ryan Vanwinkle (Ferrellgas's CFO for the first month of the nearly two-year class period alleged in that complaint) but does not contain any allegations against Vanwinkle that would render consolidation inappropriate. (*See* 16-cv-9294, Doc. No. 1, Compl. ¶ 18 (alleging that Vanwinkle signed one of Ferrellgas's quarterly reports).) Generally speaking, all three complaints allege that Defendants made false or misleading statements regarding Ferrellgas's declining propane sales, the negative impact of low crude oil prices on Ferrellgas's operations, the need to obtain an amendment to the company's existing financing agreements, and the need to reduce the company's dividend. (*See, e.g.*, Doc. No. 1 Compl. ¶ 4; 16-cv-8850, Doc. No. 1, Compl. ¶ 22; 16-cv-9294, Doc. No. 1, Compl. ¶ 32.) Likewise, although the complaints allege different start dates for the proposed class period, all three complaints allege a class period that ends with disclosures Ferrellgas made on September 28, 2016. (*See, e.g.*, Doc. No. 1 Compl. ¶ 1; 16-cv-8850, Doc. No. 1, Compl. ¶ 1; 16-cv-9294, Doc. No. 1, Compl. ¶ 1.) The

complaints also raise claims under the same provisions of the United States securities laws. Accordingly, in light of this substantial overlap, and because all of the movants seek consolidation, the Court will consolidate the above-captioned matters.

### III.  LEAD PLAINTIFF

Under the procedures established by the PSLRA, a district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the "person or group of persons" who is a named plaintiff or timely movant, satisfies the requirements of Federal Rule of Civil Procedure 23, and possesses "the largest financial interest in the relief sought by the class." *Id.* § 78u-4(a)(3)(B)(iii)(I).[3] Once established, the presumption of most adequate plaintiff may be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

"For the rebuttable presumption to apply, courts have required only a *prima facie* showing that the requirements of Rule 23 are met." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 277–78 (S.D.N.Y. 2015) (citing *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 445 (S.D.N.Y. 2013)). Rule 23 states that a party may serve as a class representative only if (1) "the class is so numerous that joinder of all members is impracticable," (2) "there are questions of law or fact

---

[3] Although "the PSLRA provides little guidance in how to assess a party's financial interest," courts in this District "tend to rely on" the four so-called *Lax/Olsten* factors – "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended during the class period; and (4) the plaintiffs' approximate losses" – which are derived from *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. August 11, 1997), and *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998). *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015). "The fourth factor is the most important." *Id.*

5

common to the class," (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Of these requirements, only "[t]ypicality" and "adequacy" are "relevant to a determination of lead plaintiff under the PSLRA." *Sallustro*, 93 F. Supp. 3d at 278 (collecting cases). With respect to typicality, a lead plaintiff's claims must "'arise[] from the same course of events'" as the class's claims and rely on "'similar legal arguments to prove the defendant's liability.'" *Id.* (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "However, the lead plaintiff's claims need not be identical to the claims of the class to satisfy the preliminary showing of typicality." *Id.* (internal quotation marks and brackets omitted). With respect to adequacy, a lead plaintiff satisfies this requirement if "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.*

In this case, the movants do not dispute that the Batai Group is a timely movant, has the largest financial interest, and satisfies Rule 23's typicality requirement. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). However, both Gracar and Baxter – the only other movants still pursuing the lead plaintiff role – argue that the Batai Group is an inadequate candidate for lead plaintiff because it is a "lawyer-created" group of investors with no pre-litigation relationship. (*See, e.g.*, Doc. No. 42, Gracar Reply at 4 ("The [Batai] Group has failed to provide any evidence of its members' prior relationships or that the Group is not an amalgamation of persons thrown together by lawyers."); Doc. No. 40, Baxter Reply at 4 ("Each of the groups has . . . failed to present any evidence demonstrating any type of pre-litigation relationship. The only reasonable conclusion is that each

group was artificially created by its' [sic] attorneys to maximize aggregate losses.").) The Batai Group, for its part, does not dispute that its members were introduced through common counsel and had no preexisting relationships among them.

To begin with, as the statute makes clear, "[g]roups of plaintiffs are specifically permitted by the PLSRA to be appointed lead plaintiff." *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009). Indeed, the PSLRA directs the district court to (1) appoint the putative class "member *or members*" it deems to be most adequate, 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added), and (2) "adopt a presumption that the most adequate plaintiff . . . is the person *or group of persons*" that possesses "the largest financial interest" and "otherwise satisfies the requirements of Rule 23," *id.* § 78u-4(a)(3)(B)(iii)(I) (emphasis added). That presumption, in turn, may only be rebutted with "proof" that the group "will not fairly and adequately protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II). In other words, even a previously unrelated group of individuals is entitled to the presumption provided it possesses the largest financial interest and satisfies Rule 23 – the statute plainly does not require the group to also prove that it is "more" adequate than competing movants with smaller financial interests.[4] *See, e.g.*, *Simmons v. Spencer*, No. 13-cv-8216 (RWS), 2014 WL 1678987, at *5 (S.D.N.Y. Apr. 25, 2014) (fact that group "consists of unrelated members of the class does not disqualify its

---

[4] Accordingly, to the extent decisions in this District suggest that the PSLRA requires a greater showing from a group with the largest financial interest, *see, e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015) (observing that "[t]he prevailing position" in this District "is that unrelated investors may join together, with review on a case-by-case basis, only if such a grouping would best serve the class" (internal quotation marks and brackets omitted) (collecting cases)), the Court respectfully disagrees that the statutes imposes such a rule. Similarly, the statute does not appear to support the rule articulated in some cases that an institutional investor, regardless of the size of its financial interest, should be favored over a group of individuals with the largest financial interest that otherwise satisfies Rule 23. *See, e.g.*, *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005) (holding that "a group of unrelated investors should not be considered as lead plaintiff when that group would displace the institutional investor preferred by the PSLRA"). Whether sensible or not, that rule is simply not reflected in the statute, which does not mention "institutional investors" but quite explicitly requires the district court to appoint "the person or group of persons" that possesses "the largest financial interest" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

appointment as lead plaintiff"; "[a] group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small, such as here with only five members, and therefore presumptively cohesive" (citing cases)).

Nevertheless, courts in this District have in many cases rejected proposed lead plaintiff groups whose members "have no common connection other than their lawyers." *In re Third Ave. Mgmt. LLC Sec. Litig.*, No. 16-cv-02758 (PKC), 2016 WL 2986235, at *2 (S.D.N.Y. May 13, 2016) (citing *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157–58 (S.D.N.Y. 1997), and collecting cases). These decisions typically involve adequacy-related concerns such as the absence of evidence that a group is capable of coordinating and supervising counsel. *See, e.g.*, *Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, No. 15-cv-3599 (KMW), 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015) (rejecting group that "failed to provide the Court with anything beyond conclusory assurances that appointing a group of unrelated investors will not lead to fragmentation"); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 357 (S.D.N.Y. 2011) (finding a proper group where the group "submitted evidence that its unrelated members w[ould] be able to function cohesively and to effectively manage the litigation apart from their lawyers" (internal quotation marks omitted)). In assessing a group's adequacy, courts ask whether the proposed group "will be able to function cohesively and to effectively manage the litigation apart from [its] lawyers," focusing on five factors: (1) "the existence of a pre-litigation relationship between group members," (2) "involvement of the group members in the litigation thus far," (3) "plans for cooperation," (4) "the sophistication of its members," and (5) "whether the members chose outside counsel, and not vice versa." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).

Here, based on the record before it, including two joint declarations from the Batai Group (Doc. Nos. 28-4, 45-1), the Court finds that the Batai Group has made a prima facie showing of "adequacy" under Rule 23. As for the first factor, pre-litigation relationship, the Batai Group effectively concedes that its members have none. The declarations do not mention how the group's members were introduced, and the Batai Group has not responded to Gracar's and Baxter's assertions that the members were introduced through common counsel. Thus, the first factor cuts against adequacy.

As for the second factor, "involvement of the group members in the litigation thus far," the Batai Group's declarations show that its members have been reasonably active. For example, the declaration submitted with the Batai Group's opening brief states that, "[p]rior to seeking appointment as Lead Plaintiff," the Batai Group members "convened a joint conference call to formalize [their] commitment to jointly prosecute this litigation and to discuss [their] duties as Lead Plaintiff." (Doc. No. 28-4, Batai Group Decl. ¶ 8.) Moreover, in a declaration submitted with the Batai Group's reply brief, the group's members indicate that they "convened [a] second joint conference call to further discuss developments in th[e] litigation since the filing of [their] [lead plaintiff] motion." (Doc. No. 45-1, Batai Group Reply Decl. ¶ 2.) Given the early stage of the litigation, the Court finds that these two conferences sufficiently demonstrate the Batai Group's members' active involvement in the litigation so far, and thus the second factor supports adequacy.

The declarations also support adequacy under the third factor, plans for cooperation. The Batai Group's opening declaration states that its members "have discussed with each other the importance of joint decision-making and maintaining regular communication that will enable [them] to confer, with or without counsel, via telephone and/or e-mail on short notice to ensure" timely decision-making, and have "exchanged contact information and . . . instructed counsel to

9

arrange for calls upon [their] demand." (Doc. No. 28-4, Batai Group Decl. ¶ 10.) The group's declarations also generally attest to, albeit conclusorily, its members' understanding of the importance of coordination, communication, and oversight over counsel. Furthermore, the fact that the Batai Group, as discussed above, has convened twice to discuss this case supports a preliminary finding that the members will take their oversight roles seriously. Thus, the third factor supports adequacy.

As for the fourth factor, sophistication of the group's members, the declarations do not provide any detail regarding the members' backgrounds or management or financial expertise. *Cf. Khunt*, 102 F. Supp. 3d at 533 (finding a group's members to be "sophisticated" after discussing their employment and investment history). In addition, without more context, the Court is unable to draw any meaningful inference (positive or negative) from the mere fact that each of the group's members purchased hundreds of thousands of dollars of stock in Ferrellgas. Accordingly, the fourth factor carries little weight in the Court's analysis.

The declarations also do not shed light on the fifth factor: whether the members chose outside counsel, and not vice versa. Given the Batai Group's silence regarding any pre-litigation relationship among its members, it seems likely that the Batai Group was organized through counsel. Nevertheless, nothing in the record suggests that the group's members were solicited inappropriately or gives the Court any reason to question the assurances in the group members' declarations that they understand their supervisory role over counsel. Thus, the fifth factor, like the fourth factor, does not substantially impact the Court's adequacy analysis.

Weighing the five factors collectively, the Court finds that the Batai Group has made a *prima facie* showing of adequacy in light of the evidence that the group's members have held two meetings to discuss this litigation, have exchanged contact information, and have exhibited an

understanding of the responsibilities they would have as co-lead plaintiffs. Accordingly, because the Batai Group was a timely movant, holds the largest financial interest, and satisfies Rule 23's requirements, the group is presumptively the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). That presumption may be rebutted only with "proof" that the group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." *Id.* § 78u-4(a)(3)(B)(iii)(II).

Gracar and Baxter have not met their burden to rebut the PSLRA's presumption. For the most part, Gracar and Baxter merely point out the fact that, in other cases, courts have declined to aggregate a group's losses due to concerns that the group was lawyer-driven and unable to coordinate. But Gracar and Baxter fail to demonstrate that the Batai Group suffers from the same problems; on the contrary, the evidence discussed above suggests that the Batai Group will function effectively. Additionally, Gracar and Baxter argue that the Batai Group should be disqualified because one of its members (Kevin Gaberlavage) initially submitted a certification containing an inadvertent mistake, which he then corrected two days later. (*See* Doc. Nos. 30, 31.) Gracar and Baxter argue that this mistake disqualifies the Batai Group, either because the mistake raises credibility questions or because the correction was made after the PSLRA's deadline for lead plaintiff motions. (*See* Doc. No. 40, Baxter Reply at 5–6; Doc. No. 42, Gracar Reply at 6–7.) In the first instance, the Court would be extremely reluctant to impose a rule that would force lead plaintiff movants to choose between leaving mistakes in their filings uncorrected or correcting the mistake and being summarily disqualified. In any event, the Court finds Mr. Gaberlavage's correction of his certification to fall well short of "proof" that the Batai Group "will not fairly and adequately protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).[5] And with respect to

---

[5] The cases cited to the contrary by Baxter are easily distinguished and generally involve mistakes that could subject a lead plaintiff to unique defenses later in the case – not mistakes that amount to typographical or clerical errors. *See,*

11

the argument that Mr. Gaberlavage's assertion of additional losses is untimely – even assuming the PSLRA's motion deadline somehow bars the correction of an inaccurate court filing two days after the filing is made – there is no dispute that, even if the additional losses are excluded, the Batai Group remains the holder of the largest financial interest.  (*See* Doc. No. 44, Batai Group Reply at 10.)

For all these reasons, the Court finds Gracar's and Baxter's attempts to rebut the presumption of the Batai Group's adequacy to be insufficient.  Thus, because the PSLRA expressly authorizes group lead plaintiffs, because the Batai Group has a far larger financial interest than Gracar and Baxter, and because the Court has found that the Batai Group meets Rule 23's requirements, the Court will appoint the Batai Group as lead plaintiff.

### IV.  LEAD COUNSEL

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(B)(v).  "There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decision[] as to counsel selection.'"  *Sallustro*, 93 F. Supp. 3d at 278 (quoting *Cendant*, 264 F.3d at 276).  However, the district court may reject the lead plaintiff's choice of counsel if necessary to "protect the interests of the class," such as where the proposed counsel is inadequately experienced or where the lead plaintiff's proposal would otherwise lead to inefficiency.  *Weltz v. Lee*, 199 F.R.D. 129, 134 (S.D.N.Y. 2001).

---

*e.g.*, *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (movant offered "differing accounts about the letters that form[ed] the very basis for his lawsuit," which "surely would [have] create[d] serious concerns as to his credibility at any trial"); *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (movant "testified that he had relied upon a report which he [later] admit[ted] did not exist at the time he allegedly relied upon it," which "subject[ed] [movant's] credibility to serious question" even if it was an "innocent mistake"); *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 144 (S.D.N.Y. 2007) (movant failed to "have the complaint and lead plaintiff motion . . . filed by the entity which actually purchased shares during the class period").

Here, the Batai Group seeks approval of its choice of Kessler Topaz for lead counsel.  In support of this choice, the Batai Group has submitted the firm's resume, which includes detailed descriptions of the firm's prior work and profiles of the attorneys who work at the firm, and demonstrates Kessler Topaz's extensive experience in litigation of this nature.  (*See* Doc. No. 28-5, Batai Group Decl. Ex. E.)  Not surprisingly, no movant has disputed that Kessler Topaz is qualified to represent the putative class or argued that the Batai Group's selection of counsel would somehow lead to inefficiency.  Accordingly, the Court approves the Batai Group's selection of Kessler Topaz as lead counsel for the putative class.

## V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT the Batai Group's motion for consolidation, appointment as lead plaintiff, and approval of its selection of counsel is GRANTED, and the same motions made by Gracar, Baxter, Sheetz, the Babcock Group, and the Carlsen Group are DENIED.  Thus, Susan Batai, Joel Brenner (individually and as trustee for the Joel Brenner MPP Plan & Trust), Kevin Gaberlavage, and Lazy Dogs Partnership LLLP shall serve as co-lead plaintiffs, and Kessler Topaz Meltzer & Check, LLP, shall serve as lead counsel.  The Clerk of the Court is respectfully directed to terminate the following motions:  Case No. 16-cv-7840, Doc. Nos. 12, 15, 16, 21, 22, and 25; Case No. 16-cv-8850, Doc. Nos. 13 and 16; and Case No. 16-cv-9294, Doc. Nos. 13 and 16.

IT IS FURTHER ORDERED THAT case numbers 16-cv-7840, 16-cv-8850, and 16-cv-9294 are consolidated under case number 16-cv-7840.  Further filings in this matter shall be made in case number 16-cv-7840.  The Clerk of the Court is respectfully directed to close case numbers 16-cv-8850 and 16-cv-9294 and to change the caption of case number 16-cv-7840 to "In re Ferrellgas Partners, L.P., Securities Litigation."

IT IS FURTHER ORDERED THAT, consistent with the November 14, 2016 Stipulation and Order (Doc. No. 11), Lead Plaintiffs shall file their consolidated amended complaint by March 20, 2017; Defendants shall answer or otherwise respond to the consolidated amended complaint within 60 days after the filing of the consolidated amended complaint; if Defendants move to dismiss the consolidated amended complaint, Lead Plaintiffs shall file their opposition within 60 days after the filing of any motion to dismiss; and Defendants shall file their reply within 45 days after the filing of Lead Plaintiffs' opposition.

SO ORDERED.

Dated:   January 19, 2017
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/19/17